### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

```
_____ )
                               )
THE AMERICAN FEDERATION OF      )
TEACHERS, AFL-CIO, et al.,      )
                               )
            Plaintiff,          )
                               )
       v.                       )   Civ. Action No. 03-79 (EGS)
                               )
BARBARA BULLOCK, et al.,        )
                               )
            Defendants.         )
                               )
_____ )
```

### MEMORANDUM OPINION

In a memorandum opinion dated March 17, 2008, this Court denied defendant Independence Federal Savings Bank's ("IFSB") motion for summary judgment on all claims brought by plaintiffs American Federation of Teachers ("AFT") and Washington Teachers' Union ("WTU").[1]  This Court found that the case was "fraught with genuine issues of material facts in dispute."  *AFT v. Bullock*, 539 F. Supp. 2d 161, 163 (D.D.C. 2008).  On April 16, 2008, IFSB filed a motion for reconsideration of this Court's denial of its motion for summary judgment, and on May 19, 2008, IFSB filed a motion for leave to file an amended answer.  On December 2, 2008, this Court held a hearing on defendant's motions.  After careful consideration of defendant's motions, plaintiffs' oppositions, defendant's replies, the parties' oral arguments, the supplemental briefs, applicable law, and for the reasons stated

---

[1] AFT is a national labor union for teachers affiliated with the AFL-CIO and WTU is AFT's local affiliate in Washington, D.C.

herein, this Court **GRANTS** defendant's motion for reconsideration and vacates the Order previously denying defendant's motion for summary judgment; all claims against IFSB are dismissed. Further, this Court **DENIES AS MOOT** defendant's motion for leave to file an amended answer.

I.   **BACKGROUND**

 **A.   Factual Background**

  **1.   The Parties**

Plaintiff AFT is a national labor union for teachers, which is an affiliated international union of the AFL-CIO. AFT represents local labor unions primarily made up of public and private school teachers, paraprofessionals and higher education faculty. AFT is a national labor organization with which local and state labor organizations are affiliated. To affiliate with the AFT, local unions pay dues. Plaintiff WTU is the local affiliate of the AFT for teachers in Washington, D.C.

There are a number of individual defendants in this action (collectively, "Individual Defendants"). Defendant Barbara A. Bullock ("Bullock") served as the President of WTU from mid-1994 to September 2002. As President, Bullock was an officer, agent and representative of the WTU, had check-signing authority for the WTU's bank accounts, and had overall responsibility for administering the affairs of the WTU. Defendant James O. Baxter, II ("Baxter") served as the Treasurer of WTU during Bullock's tenure as President. Baxter was an agent, employee and

representative of the WTU and had check-signing authority for WTU's bank accounts and financial responsibility for WTU's affairs.  Defendant Gwendolyn M. Hemphill ("Hemphill") was an employee of the WTU and served as Bullock's Special Assistant during Bullock's tenure as President.  Hemphill shared responsibility for WTU's day-to-day financial affairs with Baxter.  Defendant Leroy Holmes was a WTU employee and worked as Bullock's chauffeur for some portion of the relevant time period.

Defendant Cheryl Martin is Hemphill's daughter.  Defendant Michael Martin ("Martin") is Hemphill's son-in-law and husband of Defendant Cheryl Martin.  Defendant Errol Alderman ("Alderman") is an acquaintance of Michael Martin.  Defendant Gwendolyn B. Clark ("Clark") is Bullock's sister.

Defendant IFSB is a federally chartered commercial bank that was founded in 1968.  IFSB has six branches in Washington, D.C. and Maryland.  Between 1994 and 2002, WTU maintained several bank accounts at IFSB, including a "Premier Checking Account," with which the WTU conducted its day-to-day business, including payroll for WTU employees.

### 2.    The Embezzlement Scheme

The Individual Defendants engaged in a scheme to embezzle, convert, and misuse the WTU's funds beginning in 1995 and ending in 2002.  Def.'s Facts ¶ 38.  There is no indication that the WTU Executive Board or the WTU's members authorized the Individual Defendants' appropriation of WTU funds for personal use.  *Id.* ¶ 39.  Between 1995 and 2002, Bullock, Baxter, and Hemphill wrote

checks on the WTU's IFSB bank account for unauthorized, non-union business.  *Id.* ¶ 40.  Hundreds of these checks were made payable to Holmes, who then cashed the checks at IFSB, retained some of the cash for himself, and returned the remainder of the cash to the other Individual Defendants.  Def.'s Resp. To Pls.' Facts ¶¶ 15-19.  Some of these checks cashed by Holmes exceeded $10,000. *Id.* ¶ 20.  According to plaintiffs, between 1997 and 2002, the checks cashed by Holmes on the WTU's IFSB account totaled between $1.45 and $1.7 million.  While not conceding the exact amount of each individual check, IFSB does not appear to dispute the total amount of the checks cashed, but maintains that the "amount and Plaintiff's characterization of each check . . . is immaterial to resolution" of IFSB's motion for summary judgment.  *Id.* ¶ 15.

In addition to the checks cashed by Holmes, the Individual Defendants also made purchases with personal and corporate credit cards and paid the credit card bills with checks written on the WTU's IFSB account.  Def.'s Facts ¶¶ 41-44.  Some of the Individual Defendants wrote and cashed checks on the WTU's IFSB account and kept the cash or deposited the cash in their personal bank accounts.  *Id.* ¶¶ 45-50.  Furthermore, some of the Individual Defendants embezzled WTU funds by causing checks to be written on the WTU's IFSB account and paid to an entity maintained by Defendants Martin and Alderman, Expressions Unlimited, and keeping the funds for personal use.  *Id.* ¶ 51. Between 1995 and 2002, the Individual Defendants embezzled and

4

misappropriated in excess of five million dollars ($5,000,000) from the WTU.  *Id.* ¶ 54.

The government brought criminal charges against most or all of the Individual Defendants.  Leroy Holmes pled guilty to Conspiracy to Launder Proceeds of an Unlawful Activity.  *See United States v. Leroy Holmes*, Criminal No. 03-00032 (D.D.C. Feb. 6, 2003)(RJL).  Michael Martin pled guilty to Conspiracy to Launder Proceeds of an Unlawful Activity.  *See United States v. Michael Wayne Martin*, Criminal No. 03-00138 (D.D.C. April 11, 2003)(RJL).  Barbara Bullock pled guilty to Mail Fraud and Aiding and Abetting and Conspiracy to Commit Crimes Against the United States.  *See United States v. Barbara A. Bullock*, Criminal No. 03-00435 (D.D.C. Oct. 7, 2003)(RJL).  Errol Alderman pled guilty to Conspiracy.  *See United States v. Errol Alderman*, Criminal No. 03-00429 (D.D.C. Oct. 15, 2003)(RJL).  Cheryl Martin pled guilty to Conspiracy.  *See United States v. Cheryl H. Martin*, Criminal No. 04-00054 (D.D.C. Feb. 19, 2004)(RJL).  On August 31, 2005, following a jury trial, Defendants Gwendolyn Hemphill and James Baxter were convicted on twenty-three criminal counts, including Conspiracy and Aiding and Abetting, Wire Fraud, Embezzlement from a Labor Organization, and Money Laundering.  Those convictions were affirmed on appeal.  *See United States v. Hemphill, et al.*, 514 F.3d 1350 (D.C. Cir. 2008).

On April 18, 2006, this Court entered default judgments against Defendants Barbara Bullock, Gwendolyn Hemphill, James

Baxter, Errol Alderman, individually and doing business as Expressions Unlimited, Cheryl Martin, and Michael Martin, individually and doing business as Expressions Unlimited.  The Court ordered that the amount of the default judgment shall be determined pursuant to procedures set forth in Federal Rule of Civil Procedure 55.  On September 28, 2007, the Court granted plaintiffs summary judgment against Defendant Leroy Holmes.

**B.  Procedural Background**

On December 1, 2006, IFSB filed a motion for summary judgment against plaintiffs.  In its motion, IFSB argued that it was entitled to summary judgment on all of plaintiffs' claims on the grounds that the claims were time-barred.  *See AFT*, 539 F. Supp. 2d at 166.  Citing D.C. Code § 28:4-406, defendant further maintained that pursuant to District of Columbia banking law, plaintiffs were under a duty to discover and report the unauthorized payments within one year because IFSB provided WTU with monthly bank statements and copies of cancelled checks written on the WTU account.  *Id.*  IFSB argued that all of the unauthorized signatures, alterations, and forgeries were evident from the statements and cancelled checks and, because WTU failed to notify IFSB that the activity on the account was unauthorized, plaintiffs' claims were time-barred.  *Id.*

Plaintiffs, on the other hand, argued that any applicable statute of limitations in this case was tolled by the "adverse domination doctrine."  *Id.*  Plaintiffs asserted that Bullock,

Baxter, Hemphill and the other Individual Defendants adversely dominated, directed, and controlled the WTU throughout their scheme to embezzle WTU funds, thereby preventing discovery of the fraud.  Plaintiffs also argued that any statute of limitations was tolled by the Individual Defendants' fraudulent concealment. *Id.*  Defendant countered that there was no adverse domination of the WTU, and therefore the statutes of limitations were not tolled, because the WTU's Board, its vice president, and the AFT had domination and control over the WTU and could have discovered the embezzlement scheme.  *Id.* at 166-67.

This Court found that whether plaintiff WTU was adversely dominated, whether the Individual Defendants engaged in fraudulent concealment, and when the plaintiffs discovered or should have discovered the embezzlement scheme and the unauthorized activity with respect to the WTU account, required a highly fact-intensive inquiry that must be made by the fact finder.  In denying the motion, this Court found that genuine issues of material fact pervaded these claims and must be decided by a fact finder at trial.  *Id.* at 167.

On April 16, 2008, IFSB filed a motion for reconsideration, arguing that it is entitled to summary judgment on all claims because the claims are time-barred in light of a recent decision of the D.C. Court of Appeals in *Peters v. Riggs National Bank N.A.*, 942 A.2d 1163 (D.C. 2008).  In *Peters*, the personal representative of the Estate of Rhona Graves appealed a grant of summary judgment against his claims for breach of contract,

negligence, and violations of the Electronic Funds Transfer Act. *See Peters*, 942 A.2d at 1164.  Appellant claimed that appellee Riggs Bank permitted unauthorized withdrawals from his mother's account despite her incapacitation and even after her death. Riggs Bank denied liability, and also argued that appellant's claims were untimely.  In affirming the grant of summary judgment, the D.C. Court of Appeals held that D.C. Code § 28:4-406 imposes a "duty to discover and report unauthorized signatures or alterations to the bank" and that duty is "an absolute notice requirement for customers as a pre-requisite to bringing any claim against the bank."  *Id.* at 1166-67; *see also id.* at 1167 ("'[A] customer who does not . . . discover and report . . . is precluded from asserting against the bank the unauthorized signature or alteration'" holding that "D.C. Code § 28:4-406(f) is a statute of repose." (citation omitted)).

IFSB argues that because *Peters* stands for the proposition that § 4-406(f) imposes an absolute notice requirement and that a statute of repose is not subject to equitable tolling, any facts in dispute with regard to equitable tolling are not relevant to the summary judgment inquiry at issue here.  Therefore, IFSB maintains that it is entitled to summary judgment.

IFSB also filed a motion seeking leave to file an amended answer in order to specifically plead the statute of repose as a defense.  The Court held a motions hearing on December 2, 2008. At the hearing, the Court ordered plaintiffs to file supplemental

briefing to address what, if any, prejudice plaintiffs would suffer if IFSB were permitted to amend its answer.  The Court also ordered the parties to file supplemental briefing on the applicability, if any, of *Shea v. Rice*, 409 F.3d 448 (D.C. Cir. 2005), and *Fox-Greenwald Sheet Metal Co. v. Markowitz Brothers*, 452 F.2d 1346 (D.C. Cir. 1971).  On December 12, 2008, the Court *sua sponte* ordered the parties to address the impact, if any, of the D.C. Circuit's recent opinion in *Long v. Howard University*, 550 F.3d 21 (D.C. Cir. 2008).

## II.   STANDARD OF REVIEW

### A.   Motion for Reconsideration

The defendant's motion for reconsideration is governed by Federal Rule of Civil Procedure 54(b) due to the interlocutory nature of the Court's order denying the defendant's motion for summary judgment.  *See Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) ("A ruling that denies a dispositive motion . . . is an interlocutory judgment." (citations omitted)).  "The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b)." *Williams v. Savage*, 569 F. Supp. 2d 99, 108 (D.D.C. 2008) (citations omitted).  "In particular, reconsideration of an interlocutory decision is available under the standard 'as justice requires.'"  *Judicial Watch*, 466 F. Supp. 2d at 123 (citations omitted).

"'As justice requires' indicates concrete considerations" by the court, *Williams*, 569 F. Supp. 2d at 108, such as "whether the court patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred," *In Def. of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (internal citation and quotation marks omitted). "Furthermore, the party moving to reconsider carries the burden of proving that some harm would accompany a denial of the motion to reconsider." *In Def. of Aminals,* 543 F. Supp. 2d at 76. "These considerations leave a great deal of room for the court's discretion and, accordingly, the 'as justice requires' standard amounts to determining 'whether reconsideration is necessary under the relevant circumstances.'" *Judicial Watch*, 466 F. Supp. 2d at 123 (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)).

**B.  Motion for Summary Judgment**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  The party seeking summary judgment bears the
initial burden of demonstrating an absence of genuine issue of
material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
(1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  In
considering whether there is a triable issue of fact, the court
must draw all reasonable inferences in favor of the non-moving
party.  *Tao*, 27 F.3d at 638.

## III.  Discussion

### A.   Defendant's Motion for Reconsideration

The parties raise several legal issues in their filings:
(1) the application of federal or state law as to the accrual of
the limitation period; (2) whether defendant is equitably
estopped from raising a statute of repose defense; (3) whether
D.C. Code § 28:4-406(f) has a good faith requirement; (4) whether
§ 4-406(f) applies to the checks used in the embezzlement scheme;
(5) whether a statute of repose is an affirmative defense; and
(6) whether *Peters* bars all of plaintiffs' claims.  In order to
resolve ISFB's motion for reconsideration, it is necessary to
consider each of these legal issues to determine if they are
applicable and, if so, whether there are material facts in
dispute with regard to any issue.

### a.   Applying Federal v. State Law

Plaintiffs contend that *Peters* is not controlling in this
case as to the period of accrual of the limitation period because
determination of when the period commences is a matter of federal

law.  Pls.' Opp'n at 24.  Defendant counters that plaintiffs have

not asserted any claims against IFSB that are based on a federal

statute and that the state law claims brought against IFSB are in

federal court based solely on supplemental jurisdiction.  Def.'s

Reply at 25.  Defendant further maintains that federal equitable

tolling statutes are not applicable to statutes of repose.

The doctrine of equitable tolling provides that a party's

excusable ignorance may toll the limitations period.  *See Lehman*

*v. United States,* 154 F.3d 1010, 1016 (9th Cir. 1998).  A

statute of repose, however, serves as an absolute barrier to an

untimely suit and cannot be equitably tolled under any

circumstances.  *See Pettaway v. Teachers Ins. & Annuity Ass'n of*

*Am.,* 547 F. Supp. 2d 1, 7 (D.D.C. 2008); *see also In re Greater*

*Se Cmty. Hosp. v. HCA Inc.*, 365 B.R. 293, 305 n.24 (Bankr. D.D.C.

2006)("The court recognizes that the doctrine of equitable

estoppel does not apply to actions brought under the [Illinois

Uniform Fraudulent Transfers Act] because that statue contains a

statute of repose.").  The Court agrees with IFSB.  Plaintiffs

have asserted only state law claims against IFSB, and federal

equitable tolling does not apply to statutes of repose.  State

law applies, and *Peters* is controlling in this case.

### b.   Equitable Estoppel

Plaintiffs claim that even if *Peters* applies and equitable

tolling is not available, equitable estoppel still precludes ISFB

from raising a statute of repose defense due to fraudulent

concealment.  Equitable estoppel holds that a defendant may be precluded from taking a position because of affirmative misconduct.  *See Lehman,* 154 F.3d at 1016-17.  Defendant contends, however, that equitable estoppel does not bar IFSB from relying on the statute of repose defense.  Plaintiffs did not allege that IFSB engaged in fraud in either their First Amended Complaint or in their summary judgment brief, but instead attempt to impute the fraudulent conduct of the Individual Defendants to IFSB.  To establish fraudulent concealment, a plaintiff must show an affirmative act of concealment.  *See Williams v. Conner*, 522 F. Supp. 2d 92, 100 (D.D.C. 2007) (citing *Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1226 (D.C. Cir. 1996)).  Plaintiffs allege that IFSB "took affirmative steps to aid and abet the concealment of the embezzlement."  Pls.' Opp'n at 17.  Defendant counters that the sending of bank statements to plaintiffs demonstrates disclosure, not concealment, and that plaintiffs did not bring a claim against IFSB for aiding and abetting the Individual Defendants' fraudulent concealment of the embezzlement.  *See* Def.'s Reply at 19.  Defendant further maintains that because plaintiffs do not allege that IFSB itself fraudulently concealed information, equitable estoppel should not apply.  *Id.* at 20.

The Court is persuaded by IFSB's argument.  There is no evidence to support plaintiffs' theory that IFSB engaged in fraud, or that the Individual Defendants' fraudulent conduct can be imputed to IFSB.  Therefore, equitable estoppel does not preclude defendant from raising a statute of repose defense.

### C.   Requirement of Good Faith

D.C. Code § 28:4-406 requires bank customers to discover and report unauthorized signatures or alterations to the bank and establishes an absolute notice requirement before plaintiffs can bring any claim against the bank.[2]  *See Peters*, 942 A.2d at 1166-67.  Plaintiffs argue that the statute of repose in § 4-406(f) does not apply and cannot be used by defendant as a defense because IFSB did not act in good faith.  Plaintiffs contend that while § 4-406(f) does not explicitly refer to good faith, good faith is required by "both the full subtitle and good public policy."  Pls.' Opp'n at 9.  Defendant counters that *Peters* makes clear that § 4-406(f) provides an absolute notice requirement and does not impose a prior pre-condition of good faith.  *See* Def.'s Reply at 15.

Section 4-406(f) "is devoid of any language which limits the customer's duty to discover and report unauthorized signatures and alternations to items paid in good faith by the bank."  *Halifax Corp. v. First Union Nat'l Bank*, 546 S.E.2d 696, 703 (Va. 2001).[3]  In *Halifax*, the absence of the term "good faith" was

---

[2]  D.C. Code § 28:4-406 reads in relevant part:

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer . . . discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.

D.C. Code § 28:4-406(f).

[3]  Va. Code § 8.4-406 mirrors D.C. Code § 28:4-406.

significant, especially given the fact that the term "good faith" does appear in other sections in the statute.  *Id.*  According to defendant, if § 4-406(f) was meant to be limited to items paid in good faith, it would have articulated the good faith requirement explicitly.  The Court agrees.  *Peters* states that § 4-406(f) was intended to be an absolute bar.  Therefore,  § 4-406(f) does not impose a prior pre-condition of good faith.  *See Peters*, 942 A.2d at 1167-69.

###     d.   **Checks with Unauthorized Signatures or Alterations**

Plaintiffs contend that claims related to challenged checks, known as "red flag checks," are not barred by § 4-406(f).  Pls.' Opp'n at 5-9.  They argue that because § 4-406 refers to "unauthorized signatures" and "alterations" on checks, the provision does not apply to red flag checks with the signatures of the Individual Defendants because those checks do not contain "unauthorized signatures."  *Id.*  Plaintiffs' argument is without merit.  An "unauthorized signature" under the D.C. Code is a signature "made without actual, implied, or apparent authority and includes a forgery."  § 28:1-201(43).  The customer was the WTU, not any of the Individual Defendants.  While the Individual Defendants were authorized to sign checks for plaintiffs' official business, the Individual Defendants were not authorized to sign checks for their own use and as part of the embezzlement scheme.  They had no "actual, implied, or apparent authority" to write checks for their own use, and the instruments, thereby,

"include[d] a forgery."  *Id.*  Therefore, claims related to the red flag checks are barred by § 4-406(f).

### e.  Statute of Repose as Affirmative Defense

Having determined that state law applies, equitable estoppel does not apply, there is no good faith requirement in § 4-406(f), and that claims related to the red flag checks are barred by § 4-406(f), the Court must next determine whether any of plaintiffs' claims can survive in light of *Peters*.  The heart of the defendant's motion for reconsideration is defendant's argument that it adequately plead the statute of repose in its answer, and, therefore, all of plaintiffs' claims are barred.

The issue here is whether a statute of repose is an affirmative defense that must be pled, the failing of which waives the defense.  IFSB argues that statutes of repose are not affirmative defenses and need not be specifically mentioned in an answer.  In its answer IFSB did not specifically mention "statute of repose" but it did argue that "Plaintiffs are barred from pursuing their claims against IFSB by the applicable statutes of limitations."  Answer at 27.  Because *Peters* says that the statute at issue is a statute of repose, AFT argues that pleading the statute of limitations is not sufficient if a party intends to plead the statute of repose as an affirmative defense.

In order to address this issue, the Court directed the parties to file supplemental briefing on the implications of *Shea v. Rice*, 409 F.3d 448, 455 (D.C. Cir. 2005), and *Fox-Greenwald*

*Sheet Metal Co. v. Markowitz Bros*, 452 F.3d 1346, 1356 (D.C. Cir. 1971).  Specifically, the Court was interested in the possible significance of the statement, "statutes of limitations are statutes of repose; their purpose is to quiet stale controversies, the evidence as to which may be eroded by time." *Fox-Greenwald*, 452 F.3d at 1356.

Some courts, though not the D.C. Circuit or the D.C. Court of Appeals, have explicitly found that statutes of repose are not affirmative defenses, and therefore need not be pleaded in a defendant's answer.  *See, e.g.*, *Roskam Baking Co., Inc., v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 902-904 (6th Cir. 2002); *Cheswold Volunteer Fire Co. v. Lamberston Constr. Co.*, 489 A.2d 413, 421 (Del. 1985).  AFT argues that some courts have found that statutes of repose, by themselves, are affirmative defenses subject to waiver if not affirmatively pled in the answer.  *See Baxter v. Sturm, Ruger, & Co.*, 13 F.3d 40, 41 (2d Cir. 1993).  In *Baxter*, however, the Second Circuit did not hold that a statute of repose *is* an affirmative defense.  *Baxter* simply noted that "Sturm, Ruger raised several affirmative defenses, including the assertion that Baxter's claims were barred by the Oregon statute of repose for product liability actions."  *Id*.  This simply means that Sturm, Ruger raised the statute of repose in its answer, not that the statute of repose needed to be raised at the risk of waiver.  Likewise, in *Federal Insurance Company v. Boston Water & Sewer Commission*, 514 F.

Supp. 2d 130, 133 (D. Mass. 2007), also cited by plaintiffs, the court did not find that a statute of repose was an affirmative defense. Rather, the court merely noted that the plaintiffs had agreed to drop a claim against one of the defendants, making the statute of repose, which had been plead as an affirmative defense, moot. *Id.* In *Bonti v. Ford Motor Company*, 898 F. Supp. 391, 394 (S.D. Miss. 1995), the court specifically did not reach the question of whether a statute of repose is waived if not pled as an affirmative defense. In fact, the court found that the defendant's answer stating, "[t]he Plaintiff's claims may be barred by applicable statutes of limitation of other states including, but not limited to, those of South Carolina and North Carolina," had in fact sufficiently plead the statute of repose as a defense. *Id.* Defendant's answer in *Bonti* is strikingly similar to IFSB's answer. *See* IFSB's Answer, Affirmative Defenses at ¶ 3 ("Plaintiffs are barred from pursuing their claims against IFSB by the applicable statutes of limitations."); *see also id.* at ¶ 9 ("Plaintiffs failed to reasonably take advantage of preventative and corrective opportunities provided by IFSB to avoid harm.").

This Court is persuaded by the Sixth Circuit's adoption of the reasoning in *Cheswold Volunteer Fire Company*. In *Cheswold*, the Delaware Supreme Court reasoned that:

> While the running of a statute of limitations
> will nullify a party's remedy, the running of
> a statute of repose will extinguish both the
> remedy and the right. The statute of
> limitations is therefore a procedural

> mechanism, which may be waived.  On the other
> hand, the statute of repose is a substantive
> provision which may not be waived because the
> time limit expressly qualifies the right
> which the statute creates.

489 A.2d at 421 (citations omitted).

Accordingly, a statute of repose is not an affirmative defense that must be pled in an answer to avoid waiving the defense.  A statute of repose extinguishes a plaintiff's cause of action before it accrues, while a statute of limitations does not nullify the action, but nullifies a party's remedy.

Even if a statute of repose were a statute of limitations defense that must be pled in the answer, *Long v. Howard University*, 550 F.3d 21 (D.C. Cir. 2008), provides guidance as to the degree of specificity required in an answer.  The bar is not a high one to meet.  The issue in *Long* was whether Howard University had waived its statute of limitations defense by "failing to raise it beyond the 'boilerplate' assertion in its answer."  *Id.* at 24.  The D.C. Circuit found that Howard University had met its burden under Rule 8, and that *even* a "boilerplate" assertion of the statute of limitations as an affirmative defense in its answer was sufficient to preserve that affirmative defense at trial.  *Id.* at 24-25.

IFSB notes that in its Ninth Affirmative Defense, IFSB clearly stated that "Plaintiffs failed to reasonably take advantage of preventative and corrective opportunities provided by IFSB to avoid harm."  IFSB raised the statute in its answers to interrogatories, in response to Plaintiff's interrogatory

seeking factual details in support of IFSB's Ninth Affirmative Defense.  IFSB responded to the interrogatory by answering that "IFSB was prepared to act on any report made under D.C. Code 28:4-406. . . .  For seven years, no one ever informed the Bank that the activity on the account was unauthorized."  The parties also argued the applicability of § 4-406(f) in their respective motion for and opposition to summary judgment.

IFSB clearly put plaintiffs on notice in its answer and then in response to a request for clarification of its Ninth Affirmative Defense that IFSB believed that plaintiffs' suit was barred by the statute of limitations and § 4-406(f).  Plaintiffs "could not have been prejudiced during discovery in [their] ability to obtain factual information relevant to the statute-of-[repose] issue.  Moreover, [plaintiffs] could have sought clearer statements from [IFSB] about its statute-of-[repose] defense by using the procedures specified in Rule 36(a)(6) or 37(a)(4) of the Federal Rules of Civil Procedure."  *Long*, 550 F.3d at 25.  IFSB's statute of repose argument was properly raised and is properly before this Court.

### f.  *Peters* Bars All Claims by Plaintiffs

Section 4-406(f) imposes upon customers a duty to discover and report unauthorized signatures or alterations to the bank.  In *Peters*, the D.C. Court of Appeals was clear:

> [A] statute of repose . . . establishes an
> absolute time period within which legal
> proceedings must be initiated, regardless of
> when a cause of action accrues.  Based on the
> clear statutory language of D.C. Code §

> 28:4-406(f) - "A customer who does not . . .
> discover and report . . . is precluded from
> asserting against the bank the unauthorized
> signature or alteration" - we hold that D.C.
> Code § 28:4-406(f) is a statute of repose.

*Peters*, 942 A.2d at 1167 (internal citation omitted).  Section 4-406(f) establishes an absolute notice requirement for customers as a pre-requisite to bringing any claim against the bank.

Defendant contends that all of plaintiffs' claims are barred, including the aiding and abetting claims, because plaintiffs failed to give notice to IFSB regarding the underlying checks.  Defendant points to cases which have held that U.C.C. § 4-406(f) bars all claims against a bank, including conversion and breach of fiduciary duty, which underlie plaintiffs' aiding and abetting claims.  Def.'s Reply at 22; *see Jensen v. Essexbank*, 483 N.E.2d 821 (Mass. 1985) (cited favorably by *Peters*); *Harvey v. First Nat'l Bank of Powell*, 924 P.2d 83, 87 (Wyo. 1996) ("Appellants attempt to avoid the statutory time limitation by couching their unauthorized signatures claim in different terms; *i.e.*, claims under tort and contract and fiduciary duty theories. They cannot overcome the one-year bar by attempting to assert their claims in different terms. Plaintiffs' argument is without merit."); *Siecinski v. First State Bank*, 531 N.W.2d 768, 771 (Mich. App. 1995) (barring conversion, negligence and contract claims).

Plaintiffs counter that the aiding and abetting claims are not duplicative of the negligence claim and should not be disposed of with the other claims.  They further contend that the

aiding and abetting claims require different factual proof and defenses.  Plaintiffs argue that because § 4-406(f) only deals with the negation of a duty by IFSB, that section only reaches WTU's negligence claim.  *See* Pls.' Opp'n at 23.  Plaintiffs also argue that regardless of whether § 4-406(f) applies to this action, plaintiffs should be allowed to use the evidence regarding forged and altered checks to prove its aiding and abetting claims.

Plaintiffs' arguments are unpersuasive.  Section 4-406(f) bars *all* of plaintiffs' claims.  *Peters* clearly holds that the notice requirement laid out in § 4-406(f) is a pre-requisite to bringing *any* claim against IFSB.  *Peters*, 942 A.2d at 1169 ("'A statute of repose . . . establishes an absolute time period within which legal proceedings must be initiated.'" (quoting *Sandoe v. Lefta Assocs.*, 559 A.2d 732, 735 n.5 (D.C. 1988))).  All of plaintiffs' claims must fail.

### B.   Defendant's Motion for Leave to File Amended Answer

As a precaution, and in the event that the Court denied defendant's motion for reconsideration, IFSB filed a motion for leave to file an amended answer pursuant to Federal Rule of Civil Procedure 15(a) and Local Rule 15.1.  IFSB seeks to include two additional affirmative defenses:  (1) plaintiffs' claims are barred by the applicable statute of repose in § 4-406(f); and (2) plaintiffs' claims are barred by the applicable statute of repose in § 4-406(f) as amended and shortened by agreement of the

parties.  *See* Am. Answer at 34.  Given the disposition of the motion for reconsideration in IFSB's favor, this motion is denied as moot.  Any prejudice plaintiffs' claim would result from this motion is, likewise, moot.

## III.  Conclusion

The defendant's motion for reconsideration is **GRANTED;** the Order previously denying defendant's motion for summary judgment is **VACATED,** the defendant's motion for summary judgment is **GRANTED** and all claims against IFSB are dismissed.  Defendant's motion for leave to file an amended answer is **DENIED AS MOOT.** This is a final appealable order.  *See* Fed. R. App. P. 4(a).  An appropriate Order accompanies this memorandum.

**Signed:**     **Emmet G. Sullivan**
            **United States District Judge**
            **March 31, 2009**